[Crim. No. 1657. Second Appellate District, Division One.—September 26, 1928.]

THE PEOPLE, Respondent, v. PHILIP A. GOODWIN, Appellant.

Buel R. Wood and O. A. Jacobs for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Z. B. West, Jr., District Attorney, and L. W. Blodgett, Deputy District Attorney, for Respondent.

YORK, J.—This appeal is prosecuted from a second trial wherein the defendant, Philip A. Goodwin, was again convicted of murder in the first degree and was in said second trial sentenced to life imprisonment. On the first trial he was found guilty of murder in the first degree and sentenced to death, in which first case the judgment and order denying a new trial were appealed from and the order denying a motion for a new trial was reversed and a new trial was granted, which were both appealed from in this matter now before this court.

It is useless to discuss the circumstantial evidence, as it was unquestionably sufficiently strong for the jury to have believed the defendant guilty of murder in the first degree.

As to the claim of appellant that there was a lack of proof of venue, it is true it was not absolutely proven, but there was sufficient evidence for the jury to find, as it must have found (to have found the defendant guilty under the instructions), that the murder was committed in Orange County.

We can see nothing in the charge of misconduct on the part of the court and as to the charge of misconduct on the part of the district attorney—there is less to criticise in the remarks of the district attorney in this matter than in the average criminal case that comes before this court.

The alleged error in refusing to give instructions relative to admissions of defendant brings up a rather novel point by presenting apparently a claim of the defendant that the People are bound to accept the truth of statements made by defendant concerning admissions of a crime if the prosecution sees fit to show by their witnesses that the defendant made false and inconsistent statements. Quotations of parts or portions of evidence by themselves might substantiate the necessity of a greatly modified form of the instruction requested, but an examination of the entire transcript and all of the evidence discloses no such necessity, and in fact shows that the giving of the instruction which was refused by the court and requested by the defendant would have been misleading and confusing to the jury, as it is, to say the least, involved and uncertain. It is expressly provided by section 1870, subdivision 2, of

the Code of Civil Procedure, that the declaration of a party is admissible as evidence against such party.

The expert witness as to handwriting, it is true, did, in explaining how he drew certain conclusions, refer to matters that were not proper, yet the court when his attention was called to them in each instance, promptly instructed the jury to disregard same so that no prejudice to the defendant can be presumed.

An examination of the entire evidence shows that it was amply sufficient to sustain the conviction. We do not find any errors prejudicial to the defendant in the trial of the case, and the instructions of the court taken as a whole amply and sufficiently stated the law of the case to the jury.

The judgment and the order denying a new trial are affirmed.

CONREY, P. J., Concurring.—I concur in the judgment. The contention of appellant that the venue of the crime was not proved to be within the county of Orange, seems to be entirely without merit. Not only was the body of the deceased found at a place well within the county limits, but the condition of the body, together with the surrounding circumstances, were strongly convincing of the fact that the murder had taken place on the same premises and within a few feet from the spot where the body was found. (*People v. Watts,* 198 Cal. 776, 789 [247 Pac. 884].)

Almost equally without merit is the contention that the evidence is not sufficient to justify the verdict or to prove that appellant participated in the commission of the crime. The disappearance of Patterson and the probable date of his death was March 15, 1926. Four days before that time, in the city of Los Angeles, appellant opened a bank account by using a forged check of Patterson, drawn to an assumed name used by appellant in that transaction. Next we find that on March 13th appellant and Gaines (who was separately tried and convicted of this murder) went to San Diego in an automobile hired by appellant, and, according to some testimony, a third man was with them. Mrs. Rockett, in whose house Patterson was a roomer, testified that on that day Patterson, carrying his suitcase, went away with two men. All are agreed that Patterson and

Gaines and Goodwin were seen together in San Diego. It was at some time during Patterson's attempted return to Los Angeles that he was murdered. Appellant contends that the evidence is insufficient to prove that Patterson was with appellant and Gaines when they left San Diego on their own drive back to Los Angeles, or that appellant had any share in the planning or action of the murder. No witness at this trial testified to the presence of Patterson with appellant and Gaines on their return trip. Gaines was brought down from the penitentiary and offered by the state as a witness, but he refused to testify. It is an established fact, that, a few days after the murder, appellant sold valuable securities which had belonged to Patterson; that such sale was accomplished by forging Patterson's signature; and that the proceeds were divided between Gaines and appellant. The foregoing statements are by no means a complete history of the case, but they indicate some of the circumstances of the transactions described at the trial.

The suggestion made by counsel for appellant that the supreme court, when it reversed the judgment after the first trial (*People* v. *Goodwin,* 202 Cal. 527 [261 Pac. 1009], held that the evidence at that trial was insufficient to sustain the verdict, and the further suggestion that the evidence produced at the second trial was weaker than at the first trial, and that, therefore, the case is really settled in appellant's favor by the supreme court decision, is all based upon a misconception of the intention and effect of the former decision on appeal. The supreme court, in its opinion, specifically withheld expression of the view which has been imputed to it that the evidence was insufficient to support the verdict. Aside from a holding that the court had committed an error in one of its instructions to the jury (an error not repeated in the present record), the principal reason for reversal of the first judgment was that the superior court should have granted appellant's motion for a new trial on the ground of newly discovered evidence not available or known to appellant at the time of the first trial. Appellant had produced in support of that motion affidavits showing that these newly discovered witnesses would have testified in support of defendant's story; particularly in reference to occurrences at San Diego on the night when appellant claims to have remained at San Diego,

while waiting for Gaines to return from a pretended trip to Tia Juana. The supreme court, in its decision, indicated that if the testimony of those witnesses had been given and had been such testimony as was shown by the affidavits, this might have produced an important effcct in favor of appellant and might have led to his acquittal. In view of that decision, and especially because counsel for appellant have emphasized it, I have looked into the transcript in order to read the actual testimony of those witnesses when produced at the second trial, but, so far as I can discover, none of those names is in the record now before us.

Houser, J., concurred in the judgment.